UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ELIZABETH ADDIMANDO o/b/o S.G.A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:24-CV-335 JD |

**OPINION AND ORDER**

Plaintiff Elizabeth Addimando filed for Social Security disability benefits on behalf of her daughter, S.G.A., a three-year-old child. After being denied at all levels, Ms. Addimando filed this action, appealing the Social Security Administrative Law Judge's (ALJ) decision. For the reasons below, the Court affirms the ALJ's decision.

**A. Standard of Review**

The Appeals Council's decision is considered the final decision of the Commissioner for purposes of judicial review. *See Arbogast v. Bowen*, 860 F.2d 1400, 1402–03 (7th Cir. 1988). However, where, as here, the Appeals Council explicitly adopted the opinion of the ALJ, the Court reviews the decision of the ALJ. *Id*.

This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B.  Standard for Childhood Disability**

For a child to be considered disabled, the child's impairment must be as severe as those that make an adult unable to engage in any substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 544 (1990). Under the Social Security Act, a child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 1382c(a)(3)(C)(i). Child disability claims are evaluated under 20 C.F.R. § 416.924, which sets out a three-step sequential evaluation process. First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id*. Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id*. Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments contained in 20 C.F.R. pt. 404, subpt. P, App. 1. *Id*. The claimant bears the burden of proof at each step.

To find an impairment functionally equivalent to one in the list, an ALJ must analyze its severity in six age-appropriate categories: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for yourself, and 6) health and physical well-being. 20 C.F.R. § 416.926a(a). The ALJ must find an extreme limitation in one category or a "marked" limitation in two categories. A marked limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486–87 (7th Cir. 2007).

C.  The ALJ's Decision

S.G.A. is a minor child born in 2021. In 2022, her mother, Ms. Addimando, filed for Social Security disability benefits on her behalf. In her application, Ms. Addimando asserted that S.G.A. suffers from sensory processing disorder, Hirschsprung's disease, oropharyngeal dysphasia, development delay, and microcephaly. (R. at 67.)

At the November 2023 hearing, Ms. Addimando, who was represented by counsel (R. at 31), testified that S.G.A. is still using bottles for feeding, but about 40% of her diet consists of

actual foods, primarily crunchy finger foods. She does not eat purees. (R. at 52.) S.G.A. is no longer in outpatient occupational therapy for feeding but has appointments every three months to monitor her feeding schedule. (R. at 52–53.) She has stopped aspirating on liquids. (R. at 53.) S.G.A. is no longer receiving physical therapy for gross motor skills but does receive occupational and speech therapy at home weekly. (*Id*.) She has been prescribed braces for toe walking due to hyperflexed muscles and continues to toe walk. (R. at 53–54.) Ms. Addimando expressed concerns about S.G.A.'s gross motor skills, as she often falls and bruises herself. (R. at 54.) S.G.A is not potty trained and continues to experience straining with stooling, for which she takes MiraLAX twice daily.

Ms. Addimando further testified that S.G.A. has been diagnosed with autism at the Reilly Developmental Center in April 2023. (R. at 57.) Her autism symptoms include behavioral issues such as self-harm, reluctance to be around people, and aggression towards her sister. (R. at 58.) S.G.A. is receiving Applied Behavior Analysis therapy at home five days a week to address her behavioral issues, which started in October 2023. (R. at 56.) She struggles with comprehension and often requires tasks to be explained to her, indicating a lower level of understanding. (R. at 63.) Her speech therapy began when she was about a year and a half old, and she has shown improvement, now saying approximately 50 words, whereas before she could say only a couple words. (R. at 55, 63.)

On February 16, 2024, the ALJ issued a decision, finding that S.G.A. was not disabled. (R. at 39.) At step two of the sequential analysis, the ALJ found that S.G.A. had five medically determinable impairments: "Hirschsprung's disease; microcephaly; oropharyngeal dysphagia; fine motor delay; and sensory processing delay." (R. at 32.) However, at step three, the ALJ found that S.G.A.'s impairments, considered individually and in combination, did not meet or

equal in severity the criteria of a listed impairment. (R. at 33.) In particular, of the six functioning domains S.G.A. suffered a marked limitation only "in acquiring and using information." (R. at 34.) She had only "less than a marked limitation" in the rest of the functioning domains. (*Id.*) According to the ALJ, "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 36.)

Relevant to this appeal, the ALJ considered the February 2023 psychological consultative examination by Dr. Paula Neuman, Psy.D., during which she administered the Bayley, Fourth Edition Test, yielding results of "very low" or "extremely low" scores. Dr. Neuman noted that S.G.A. was at moderate risk for autism spectrum disorder. The ALJ referenced Dr. Neuman's findings as support for the conclusion that S.G.A. had a "marked limitation in acquiring and using information." (R. at 36.) However, the ALJ declined to give Dr. Neuman's report any further evaluative weight, stating that her report "notes diagnoses and test results, but does not contain an opinion regarding the claimant's functioning." (R. at 39.) In other words, the ALJ did not treat Dr. Neuman's report as a medical opinion regarding functional limitations, finding it only a source of test results and diagnoses, not a statement of functional impact.

**C. Discussion**

In her appeal, Ms. Addimando submits that the ALJ erred by failing to evaluate all medical opinions of record in determining S.G.A.'s functional limitations. In particular, she insists that Dr. Neuman's medical report contained medical opinions, yet the ALJ did not address

5

them.[1] It's worth noting that this is essentially the entirety of her argument: it is cursory, undeveloped, and unsupported by any authority. By failing to develop her argument, Ms. Addimando has waived it.[2] *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). But even if considered on its merits, the argument fails.

Dr. Neuman's evaluation did not produce a medical opinion, so the ALJ cannot be faulted for failing to treat it as an opinion when reaching her decision. The regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. § 416.913(a)(2). For children, medical opinions are about impairment-related limitations and restrictions in the abilities in the six domains of functioning. 20 C.F.R. § 416.913(a)(2)(ii). The regulations applicable to child disability claims distinguish between "formal testing that provides information about your development and functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents" and medical opinions. See 20 C.F.R. § 416.924a(1) ("Medical evidence of your impairment(s) must describe symptoms, signs, and laboratory findings. The medical evidence may include, but is not limited to, formal testing that provides information about your development or functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents. It may also include opinions from medical sources about the nature and severity of your impairments.").

---

[1] Oddly, even though this appeal is based in the Seventh Circuit, Ms. Addimando cites only one Seventh Circuit case in her discussion (*see* Pl. Br., DE 9 at 5 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)), relying instead on district court cases from California and on several opinions from the First and Ninth Circuits (*see* Pl. Br., DE 9 at 5–6).

[2] Ms. Addimando made her contention in her opening brief and did not file a reply.

Dr. Neuman's report provides that S.G.A. scored "very low" or "extremely low" on the Bayley–4th Edition test (*see* R. at 991) and it provides a diagnosis (*see* R. at 992 ("DIAGNOSIS: F88 Global Developmentally Delayed; F80.2 Mixed Receptive-expressive language disorder; F88 Sensory integration disorder")), but she provides no statement about what S.G.A. can still do despite her impairments or if she has impairment-related restrictions. While the report includes a section entitled "Summary of Mental Status, Diagnostic Impressions and Medical Source Statement," it contains only information about previously established diagnoses, some information from Ms. Addimando about S.G.A.'s medical history, and the already-mentioned diagnoses. None of this constitutes a medical opinion, and Ms. Addimando's own somewhat awkward characterization of the report as an "opinion" that "does not include an 'opinion' about [S.G.A.'s] functioning" (Pl. Br., DE 9 at 4) adds nothing to the discussion. *See, e.g.*, *Hunt v. Berryhill*, No. 18-cv-577, 2019 U.S. Dist. LEXIS 100398, at *8 (W.D. Wis. June 14, 2019) ("Although the administrative law judge did not identify what weight, if any, he gave to Dr. Kanz's report, he was not required to do so. To qualify as a medical opinion, a statement must reflect a judgment about the nature and severity of the impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and any physical or mental restrictions."); *see also Ivair M. v. Berryhill*, No. 18 C 3884, 2019 U.S. Dist. LEXIS 80028, at *6–7 (N.D. Ill. May 13, 2019) ("Plaintiff cites to no authority for the proposition that a diagnosis, standing alone, must be analyzed as a 'medical opinion.' This notation that does not contain a prognosis, assess Plaintiff's restrictions, or discuss what he can do despite his impairments, is not a medical opinion." (citing *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) ("Dr. Roth's reports contain symptoms and diagnoses, but not a prognosis, a discussion of what Horr could do despite her impairments, or an assessment of her physical restrictions. By

7

contrast, a medical opinion is a statement that reflects a judgment about the nature and severity of the impairment . . . .").

In the alternative, Ms. Addimando argues that the ALJ should have engaged a medical expert to interpret Dr. Neuman's test results and assess S.G.A.'s functional limitations. According to Ms. Addimando, the ALJ instead succumbed to the temptation to "play doctor," interpreting the raw test results herself and substituting her judgment for that of a qualified expert. Here, too, the argument is perfunctory. Ms. Addimando provides nearly a page and a half of string citations asserting that the ALJs may not interpret raw medical data, but she fails to explain how the ALJ in this case did so. (*See* Pl.'s Br., DE 9 at 4–6.) As a result, Ms. Addimando likewise waives this argument. But even setting that aside, the argument fails.

The ALJ's decision shows that she did not interpret raw medical data. While she referenced Dr. Neuman's test results in finding that S.G.A. had a marked limitation in acquiring and using information (R. at 39), she also made clear that she was relying on the opinions of state agency physicians who reviewed those results:

> At the initial level, J. Hoke, Dr. Lovko, and Dr. Quant-Callender reviewed the evidence in March 2023 and said the claimant had marked limitation in acquiring and using information and less than marked limitations in the other functional domains (Exhibit 2A/3,5-7). At the reconsideration level, M. Thomas, Dr. Shipley, and Dr. Brill reviewed the evidence in June 2023 and affirmed the previous assessment (Exhibit 3A/3,5-7). The undersigned finds their assessments persuasive. They are supported by the clinical findings noted during their reviews, including diagnostic speech-, swallow-, and *developmental/mental testing (Exhibit 2A/3-7;3A/3-7)*. Their assessments are consistent with the objective medical evidence and hearing testimony in the record noting the claimant's improvement in these areas and corroborating the existence of severe, but not disabling, impairments and symptoms (Exhibits 16F/4-6,10,12-14,17-18,27,29; 21F/310; HT).

(R. at 38 (emphasis added).) The consultants explicitly cited the February 7, 2023, testing scores in support of their assessments (R. at 70–73, 77, 79–81, 991). Accordingly, the ALJ appropriately relied on the consultants' interpretations of the test results when evaluating the

claimant's functioning across the six domains. The regulations make clear that the ALJ must consider test scores when assessing a claimant's functioning across the six domains. *See* 20 C.F.R. §§ 416.924a(1)(ii), 416.926a(e)(4). Here, the ALJ not only considered the test scores, but also considered the findings of medical sources trained to review those scores. Contrary to Ms. Addimando's argument, the ALJ did what Ms. Addimando claims she should have done: she properly relied on the experts to interpret Dr. Neuman's report.

Nor is there any requirement that the ALJ engage an additional expert to interpret Dr. Neuman's test results. "This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed to accomplish that goal." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). Since two different state agency physicians had reviewed the test results, the ALJ did not act unreasonably by not engaging an expert. *See, e.g.*, *J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (no error where ALJ did not arrange sua sponte for a third medical expert to assess the evidence where two state agency consultants opined that the claimant did not suffer from impairments that met or equaled a listing).

### E. Conclusion

For these reasons, the Court AFFIRMS the Agency's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 11, 2025

/s/ JON E. DEGUILIO
Judge
United States District Court